## Case No. 8,847.

### McKAY v. WOOSTER et al.

[2 Sawy. 373; 6 Fish. Pat. Cas. 375; 6 Am. Law T. Rep. 169; 3 O. G. 441; 5 Pac. Law Rep. 105.] [1]

Circuit Court, D. California. April 7, 1873.

PATENTS—ASSIGNMENT OF TERRITORY — RIGHT TO VEND THEREIN—LAWFUL SALE—EMANCIPATION.

1. When a patented article has been lawfully made and sold without restriction or condition, it is no longer within the monopoly, and the purchaser may use it without restriction as to time or place.
   [Cited in Holiday v. Mattheson, 24 Fed. 186; Hobbie v. Jennison, 40 Fed. 891; Rice v. Boss, 46 Fed. 197; California Electrical Works v. Finck, 47 Fed. 586.]

2. The assignee of all the right, title and interest of the patentee in his invention and patent, in a specified territory, without any restriction upon his right to vend in said territory, may, with respect to the rights of a subsequent assignee for other territory, lawfully sell the patented article

within his own territory, without restriction or condition.
   [Cited in Hatch v. Adams, 22 Fed. 438; Hobbie v. Smith, 27 Fed. 662; Graff v. Boesch, 33 Fed. 279; Rice v. Boss, 46 Fed. 197.]

3. B. is assignee, without restriction or condition, of all the rights of the patentees for the territory east of the Rocky Mountains, in a patent for an improved case for transporting eggs. M. is a subsequent assignee for all the territory west of the Rocky Mountains. E. purchased of B. at Chicago, a number of his patent cases, filled them with eggs in Iowa, and transported the eggs in said cases to San Francisco: Held, that such use of the cases west of the Rocky Mountains is not an infringement of the rights of M., under his assignment for the territory west of the Rocky Mountains.

Bill in equity [by David McKay against John B. Wooster and others,] to restrain the infringement of a patent right, by use and sale of a patented case for the transportation of eggs. The following facts appear from the stipulation of the parties filed in the case: On February 26, 1867, a patent was duly issued to J. L. and G. W. Stevens, of San Francisco, for an "improvement in cases for transporting eggs." In August, 1872, said patentees, by deed, granted and assigned to H. F. Billings, of Chicago, in the state of Illinois, "for, to and in all the states and territories of the United States, east of the Rocky Mountains, all the right, title and interest which they, the said John L. and George W. Stevens had in and to the said letters patent, and the invention as secured to them by said letters patent, and all their rights, liberties, privileges and franchises which they had or might acquire by or under the said letters patent," which said deed was duly recorded. Since said assignment, said Billings has erected a manufactory for said patent cases for the transportation of eggs, at Chicago, in the state of Illinois, and has manufactured, in accordance with the specifications of said patent, and he still continues to manufacture said cases; and he has sold and he continues to sell the same "to the public, or to whomsoever desires or desired to purchase them, without any restriction or reservation whatsoever." On the seventeenth of October, 1872, said J. L. and George W. Stevens made a similar transfer of all their right, title and interest in said patent and invention, in and to all the states and territories lying west of the Rocky Mountains, to the complainant, David McKay, who thereupon entered upon the manufacture of said patent cases at San Francisco; and he has ever since continued to manufacture and sell the same for use in that portion of the United States lying west of the Rocky Mountains.

The defendants are commission merchants, doing business at San Francisco, receiving goods consigned by merchants east of the Rocky Mountains, and selling the same on commission. M. Evans & Co., are merchants, doing business at Ames, in the state of Iowa, and a part of their business is dealing in eggs. Said Evans & Co., between the

1 [Reported by L. S. B. Sawyer, Esq., and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission.]

seventeenth of October, 1872, and the filing of the bill in this case, purchased in the usual course of business at Chicago, of said Billings, "without any restrictions or reservation" on his part, a number of said patent cases manufactured by him as aforesaid, filled them with eggs in the state of Iowa, for the purpose of transportation, and shipped them so filled with eggs to defendants at San Francisco, who received them and sold the eggs on commission in the regular course of their business as commission merchants. The use of the aforesaid cases in the transportation of eggs from the Rocky Mountains to San Francisco, is the infringement complained of; and the threatened continuance of the practice, and further use and sale of the cases so received, the injuries sought to be restrained. Numerous other parties are engaged in similar transactions.

Holland & Spencer, for complainants.

H. H. Haight and Clark Churchill, for defendants.

SAWYER, Circuit Judge (after stating the facts). Under the view I take, the only question necessary to determine, seems to be precisely the same decided by Shepley, Circuit Judge, in Adams v. Burke [Case No. 50], viz: "Does the purchase of a patented article, lawfully manufactured, and sold without restriction or condition, within his territory by the territorial assignee of a patent right, convey to the purchaser the right to use or sell the article in another territory, for which another person has taken an assignment of the same patent?"

The learned judge answers the question in the affirmative. This is the only case I have found in which the precise question has ever been considered. One would suppose that a question of so much importance, and so likely to arise, would long since have been presented to the supreme court, and authoritatively determined, but it does not appear to have been done. It is insisted that the case cited is not correctly decided, and argued with a great deal of force, that since Lockhart and Seeley in that case, and Billings in this, only purchased the right of the patentees in a limited territory, they did not themselves have the right to supply, either directly or indirectly, other territory than that purchased; that their right only extended to making, using and vending to be used in the specific territory purchased; that, as they had themselves no right to use in other territory, their vendees could acquire no greater right than they themselves owned; that their purchase of the right to a specific territory necessarily limited their power to sell the machine to be used in that territory alone; that this limitation and restriction is necessarily implied in the sale, even without any express stipulation to that effect; that the patent under the fifth section of the act of congress of 1836 [5 Stat.

117], in terms, gives the patentee "the full, exclusive right and liberty of making, using and vending to others to be used," the said invention throughout the jurisdiction of the United States; that the eleventh section authorizes him to assign the whole or part of his interest for "any specific part or portion of the United States;" that when he assigns his entire interest for a specified part, he assigns the right acquired under the fifth section of "making, using, and vending to others to be used," in that specific part, and "to be used, as well as to make and use in that part alone;" and, therefore, when an assignee of a specific territory sells a machine in that territory, the machine so sold is taken out of the monopoly as to that territory only, there being no power in the vendor to withdraw it from the monopoly, as to other territory in which he has no monopoly or control, and that he can only dispose of his own share of the monopoly, or liberate therefrom to the extent of his own interest therein. This it is argued, is the reasonable construction of the law, and the contract of assignment of the right of the patentee to a specific part of the territory authorized by the act. The consequences of a different view are also urged in support of the position taken, some of which, it is said, find a striking illustration in this case. Thus, it is argued, that labor and materials being cheaper, and the other facilities for cheap manufacture being greater at Chicago than at San Francisco, the patent cases for transporting eggs can be made at a cost so much lower at Chicago than at San Francisco, that the purchaser of the Chicago manufacture could undersell the complainant in his own territory. Eggs, also, being so much cheaper east than west of the Rocky Mountains, large quantities are there purchased, and sent to these Western markets. The transportation of the patent cases costs nothing, because it is necessary in shipping to use boxes or cases of some kind, and these require no more room than others.

The freight is paid on the eggs as merchandise, and the greater security against breakage, and the improved condition of the eggs brought in these cases, more than compensate for their cost at Chicago. Those dealing in eggs, therefore, can purchase these patent cases at Chicago, ship them with eggs from any part of the United States east to parts westward of the Rocky Mountains, and after disposing of their contents, sell them at half cost, or even give them away, and still make a remunerative profit on their transaction. There is no use for the cases for return freight. Thus the entire market west of the Rocky Mountains, including nearly one third of the territory of the United States, can be wholly supplied, indirectly, through middlemen, at prices less than it is possible to make the article for here, by parties who have only purchased the territory east, to the utter loss or ruin of those who have pur-

chased and paid for the territory west of the Rocky Mountains. So, again, it is said, it may well be in the case of many inventions, that some particular locality affords such facilities for cheap manufacture that the whole United States may be supplied from that point at prices that would defy competition in any other locality, so that it would only be necessary to purchase the right for the territory on which the factory is located, in order, through middlemen, to practically enjoy a monopoly of the whole country.

It is easy to see that the result of supplying the whole country, indirectly through the merchant, who is usually the seller to the consumer, is precisely the same as though the maker himself directly sells to the consumer. It must be confessed that these arguments are entitled to grave consideration. Enough has been said in this, and in the case cited, to render it manifest that great practical inconvenience may result from either view.

In the absence of an authoritative adjudication, I should hesitate long before venturing to dissent from a well considered decision of so learned, experienced and eminent a jurist as Judge Shepley. But in this instance, I can perceive no good ground for doubting the soundness of the proposition laid down in the guarded form in which it is stated in the case cited.

An important question not discussed by the learned judge, may, however, arise, as to when, or under what state of facts, a patented machine may be regarded as "lawfully * * * sold without restriction or condition, within his territory, by the territorial assignee of a patent right."

In the case now under consideration, it will be seen by reference to the stipulated facts, that the assignment to Billings was made in August, 1872, while that to complainant was not made till October following. If there is any conflict, therefore, in the rights claimed by the parties, the complainant's assignment, so far as the conflict is concerned, being subsequent in time, was taken in subordination to the prior grant to Billings—that is to say, he could only take by his assignment what was left after Billings' interest had been carved out. At the date of the assignment to Billings, the patentees were still the holders of the entire interest under the patent. Had they, at that time, at Chicago, sold one of the patented articles in question, without restriction or condition, that, undoubtedly, would have been a lawful sale without restriction or condition, and the article so sold would have been taken out of the monopoly, and the purchaser, or any one deriving title through him, would have been entitled to use it till worn out in any part of the United States. The patentee himself could not, by a subsequent assignment of his patent, have limited the right of the purchaser already vested. The vendor, being at that time entitled to the whole monopoly for the entire jurisdiction of the United States, it was competent for him to wholly emancipate the article sold by taking the entire royalty for the use in any part of the territory. And a sale, without restriction or limitation, would work such emancipation. In such case any party subsequently purchasing the right to any specific portion of territory, would take that right subject to the use of the machine so sold, at any point within the territory purchased. What the patentees could do with respect to one machine, they could do as to any number of machines in existence, or to be brought into existence. What they could do themselves, they could by contract authorize, or convey the right to any other party to do. As the patentees themselves could lawfully sell these patented articles at Chicago without restriction or condition, so as to authorize the purchasers, or those claiming under them, to use the machine anywhere in the United States, they could convey the right to Billings to lawfully do the same. This authority to emancipate from the monopoly by an unrestricted sale was a part of their "right, title and interest in the invention secured by the patent," that could be exercised and enjoyed at Chicago, or other place east of the Rocky Mountains, as well as elsewhere. The assignment to Billings is in the broadest terms. It is of "all the right, title and interest which the said John L. and George W. Stevens had in and to the said letters patent, and the invention as secured to them by said letters patent, and all their rights, liberties, privileges and franchises, which they had, or might acquire by or under said letters patent;" "for, to and in all the states and territories of the United States east of the Rocky Mountains." There is no limitation of the power to vend within the territory. The patentees could lawfully make without restriction or condition, could use without restriction or condition, or could vend without restriction or condition anywhere within the specified territory, and all their rights they conveyed to Billings without restriction or condition, who, thereupon, stepped into the shoes of the patentees, as to the territory sold. Had they intended to limit the right of vending, "to vending to be used" by the purchasers within the territory sold only, they should, at least have so specified the intention, and by some apt words restricted the right of use in the deed of assignment. This unrestricted assignment of the right to vend, put it in the power of Billings to lawfully vend the patented article within his territory without restriction or condition, and, thereby, wholly emancipate from the monopoly the articles so sold. The complainant subsequently purchased his territory, and, whatever the terms of his grant, he could, of course, only obtain what was left of the franchise, or monopoly. As the patentees, after their sale to Billings, could not object to sales by him without re-

strictions or conditions, their subsequent assignee cannot object. The latter's right is subject to the right of Billings, and those who have lawfully purchased without restriction or condition from him. This is as far as it is necessary to go in this case. It is unnecessary, now, to consider the effect of an express limitation in the deed of assignment of the right to vend for the purpose of use only within the purchased territory; or how far the complainant, being a subsequent purchaser of territory, can lawfully vend without restriction or condition, so as to wholly emancipate the article sold from the monopoly, and enable the purchasers of the patented article of his manufacture to use it in the territory of Billings.

If there is any practical hardship in the construction adopted of the law and contract under it, and it should turn out to be the correct construction, then the patentee, when he desires to assign, must consider whether he can afford to do so without restriction, and the subsequent purchaser, when he wishes to buy, must determine whether he can afford to do so with the burden entailed upon his territory by a prior grant unlimited in the particulars indicated. There must be a decree for defendants. Let the bill be dismissed with costs.

[NOTE. This case was affirmed by the supreme court at the October term, 1873. The case was taken to the supreme court on appeal, where the decree of the court below was affirmed, with costs, December 15, 1873. There was no opinion, and the case is not reported.
[For other cases involving this patent, see note to Coburn v. Schroeder, 8 Fed. 519.]