### HOBBIE *et al. v.* JENNISON.

#### (*Circuit Court, E. D. Michigan.* March 4, 1889.)

PATENTS FOR INVENTIONS—INFRINGEMENT—VIOLATION OF TERRITORIAL RIGHTS.

The sale of a patented article by an assignee of the patent within his own territory carries the right to use it within territory owned by another, though it be known to both parties that a use outside the vendor's territory is intended.

(*Syllabus by the Court.*)

This was a common-law action for the infringement of letters patent No. 45,201, issued to one Wyckoff, November 22, 1864, for an improvement in gas and water pipes. The case was tried before the court upon substantially the following state of facts: Plaintiffs were the assignees of the patent for New York, New England, and all the eastern states north of the Carolinas, and carried on business as manufacturers of the patented pipe at Tonawanda, N. Y., with sufficient facilities for supplying the market in all the territory owned by them. Defendant's firm, which had consisted of himself and one Ayrault, was the assignee for the state of Michigan and other states, manufacturing the pipe at Bay City, in this state. This firm did business during the greater part of 1880, having succeeded the firm of Ayrault, Smith & Co., which manufactured at the same establishment during the years 1877, 1878, and 1879. Ayrault, Jennison & Co. were in turn succeeded, in the latter part of 1881, by a corporation located at the same place, and owning the same plant, under the name of the Michigan Pipe Company. Two suits have been already brought and carried through to judgment by the present plaintiffs as territorial owners of the Wyckoff patent, for similar infringements to those charged in this case,—one against members of the firm of Ayrault, Smith & Co., and the other against the Michigan Pipe Company. These suits were brought in the northern district of New York, and were decided by Judge COXE, whose decision is reported in 27 Fed. Rep. 656. No question was made in this case with regard to the title of the plaintiffs, nor the validity of the patent, but the case turned upon the legality of a certain sale of pipe made by the defendant's firm. On the 16th of April, 1880, Andrew Harvey & Son, of Detroit, wrote the defendants that they had about closed a contract to put in a steam-supply apparatus, with four miles of pipe, and wanted to

know the lowest cash price for wood casing for steam-pipe, adding: "I [Andrew Harvey] expect to leave the city in a few days, and wish to receive an answer before going." On the following day defendant's firm answered, stating they would sell them what steam-pipe casing they might need at $20 per thousand feet, board measure, etc. Negotiations seem to have taken place at that time between Harvey and the Hartford Steam Company, of Connecticut, for laying a quantity of steam-pipe in that city; for, on the 5th of May, Mr. Loomis, secretary of the company, writes to Harvey & Son, accepting their proposition, and asking them to get prices of wood pipe, and send to him, "so we can get some ordered, and when they will commence to deliver it." On the 12th of May a contract was signed between the defendant's firm and Harvey & Son, by the terms of which defendant agreed to pay to Harvey & Son a commission of 10 per cent. on all orders sent them direct, and also upon all orders they might influence to take the casing, at the rate of $20 per thousand feet on cars at Bay City. On the same day this contract was signed defendant's firm write Harvey & Son, giving the rate from Bay City to Hartford at $55 a car, and saying that their understanding was that, under the arrangement made with defendant, Harvey & Son should make their best efforts to turn all their trade to defendant's firm, expressing the hope to hear from them soon in reference to the Hartford order.

On the same day a statement of prices for different sizes of casing was made out and given to Harvey, which Harvey & Son soon after inclosed to the Hartford Company in their letter of May 17th, and on June 3d Loomis writes to Harvey, saying that perhaps it was better to only give orders for one-half at present, and get firm at it. A memorandum of same date was sent by him of the pipe which would be required.

He also says that prices of wood pipe are too high; wants him to get it reduced, if possible, and make as good a contract for freight as possible. On the 10th of June Harvey telegraphed to defendant's firm requesting Ayrault to come down to Detroit on the first train for an order. On the following day an order in writing was signed by Harvey & Son for wooden pipe casing, to be shipped "to the Hartford Steam Supply Company;" the items being the same exactly, and one-half the quantity, (except in one instance,) specified in Loomis' memorandum of June 3d. On the 18th of June, Mr. Loomis, secretary of the company, sends directly to defendant's firm an order, in addition to the order given by Harvey & Son, of the remaining one-half of the casing specified in the memorandum of June 3d. The further correspondence between the parties relates to the manner in which the pipe was to be paid for, New York drafts being remitted directly from Hartford to defendant's firm, which remitted to Harvey & Son their check for the 10 per cent. commission agreed between them in their contract of May 12th. An additional order for 3,000 feet of casing was given to defendant's firm by Loomis, under date of July 30th; and some other small orders, given in the same manner, followed before the close of the season. The pipe was all laid down, under Harvey's direction, in the streets of Hartford.

*James A. Allen* and *A. P. Jacobs*, for plaintiffs.
*George H. Lothrop* and *Wm. Jennison*, for defendant.

BROWN, J. Plaintiffs' position in this case is that there was either a sale of the steam-pipe to Harvey & Son, with the knowledge that they were to resell to the Hartford Company, in which case the defendant would be held liable as an infringer, under the ruling in *Hatch* v. *Hull*, 30 Fed. Rep. 613, and *Hatch* v. *Adams*, 22 Fed. Rep. 434; or that Harvey was the agent of Ayrault, Jennison & Co. in selling to the Hartford Company, and that such sale was made in the state of Connecticut, in violation of plaintiffs' rights as the assignee of this territory. But about the only evidence which tends to show an agency on the part of Harvey is the agreement of May 12th, wherein Ayrault, Jennison & Co. agreed to pay Harvey & Son a commission of 10 per cent. upon all orders they might obtain for this casing. This agreement, however, was made a month after Harvey had notified them of his proposed contract to put in four miles of pipe for the Hartford Company, and a week after his proposed contract with such company had been accepted; and was undoubtedly made for the purpose of securing Harvey's influence in the sale of the pipe, not only in Hartford, but in other eastern cities. It is pertinent in this connection to notice that, on the 8th of May, Harvey wrote to Loomis, saying that he was sending all over for prices for iron pipe to be delivered at Hartford. In fact, Harvey, in his testimony, states that, before he had any communication upon the subject with Ayrault, Jennison & Co., he had closed the contract with the Hartford Steam Company to lay several miles of pipe for them. On the day following his contract of May 12th, Harvey writes to Loomis:

"I have been up to Saginaw, and have made inquiries about prices, and the best that they will do now is $20 per thousand, board measure, delivered on board cars at Saginaw. But this company have split partnership, and there will be two firms manufacturing this next week, and I am figuring with them both, and will try to get it cheaper. I am also figuring about freight from different points, so as to get the cheapest freight to Hartford."

We think the other evidence completely rebuts any presumption of agency arising from the contract of May 12th. Not only does the correspondence between Harvey and the Hartford Company indicate that he was negotiating with defendant for them, but the pipe was shipped directly to them, and, except in the first instance, upon their order, and was paid for by them, as well as the freight from Bay City to Hartford. The books of Ayrault, Jennison & Co., which were also put in evidence, show that the account was kept with the Hartford Steam Company, a general statement of which account was sent them in a letter of November 19th. Considered in the light of surrounding circumstances, we are not prepared to accept the theory that Harvey & Son were the agents of the defendant, or that the sale of the pipe was made to them. Indeed, Harvey himself swears that he was acting as the agent of the Hartford Company in getting prices, and that Loomis relied upon him in the matter. We regard the contract of May 12th simply as an instance of a cus-

tom which may be common enough among purchasing agents, but to which no court has yet been found to lend its sanction. He was evidently acting for the Hartford Company, which was relying upon his judgment, zeal, and discretion in making the purchase, and had no right to take a commission from the defendant without at least disclosing that fact to his principal. Mechem, Ag. § 943; *Insurance Co.* v. *Insurance Co.*, 14 N. Y. 85; *Scribner* v. *Collar*, 40 Mich. 375.

As the pipe was delivered by defendant's firm upon the cars at Bay City, upon the written order either of Harvey & Son or the Hartford Company, there can be no serious question that this was a sale and delivery at Bay City, although, if the order had been verbal, it would probably be held, under the statute of frauds, that the property in the pipe did not pass until it had been received and accepted by the steam company in Hartford. This was the conclusion of Judge COXE in *Hobbie* v. *Smith*, 27 Fed. Rep. 656, arising out of a similar transaction by the defendant. See, also, *U. S.* v. *Shriver*, 23 Fed. Rep. 134; *Backman* v. *Jenks*, 55 Barb. 468, and other cases cited in Judge COXE's opinion.

The case, then, reduces itself to the simple question whether, conceding the sale to have been made at Bay City, the defendant can be held as an infringer by reason of his knowledge that the property was to be used in a territory of which plaintiffs held a monopoly; for we take it to be clear that if the sale had been innocently made, that is, with the expectation that the pipe was to be used in defendant's own territory, there could be no doubt that he would not be chargeable. Were this an original proposition, we should be strongly inclined to hold that the vendor of a patented article, who sells the same for the purpose of or knowing that it will be resold or used in territory belonging to another, is equally amenable to suit as if the sale were made in such other territory. The patent laws give to the patentee the exclusive right to use, as well as to manufacture and sell, within the territory properly belonging to him; but it is difficult to see how this right can be properly protected, if the assignee of other territory, who may perhaps possess greater facilities, superior energy, or a larger amount of capital than himself, may flood his territory with the patented article, by means of the easy device of selling and passing the property within the territory owned by himself. Indeed, the gist of the offense to the plaintiffs in this case consists, not more in the actual sale in their territory, than in the use of the article sold, since their own market has been impaired to the exact amount of the profits they would have realized from such sale if made by themselves. This seems to us not only a just and reasonable construction of the law, but in line with the long list of cases which hold that where a party makes one or more elements of a patented combination, with the intent that they shall be used in the completed combination, he is liable as an infringer. *Richardson* v. *Noyes*, 2 Ban. & A. 398; *Bowker* v. *Dows*, 3 Ban. & A. 518; *Wallace* v. *Holmes*, 9 Blatchf. 65; *Saxe* v. *Hammond*, 1 Holmes, 456; *Manufacturing Co.* v. *Zylonite Co.*, 30 Fed Rep. 437; *Schneider* v. *Pountney*, 21 Fed. Rep. 403; *Travers* v. *Beyer*, 26 Fed. Rep. 450.

The supreme court, however, seems to have taken a different view of

this very question in the case of *Adams* v. *Burke*, 17 Wall. 453. In this case an undertaker purchased patented coffin lids of certain manufacturers, who held the right from the patentee to manufacture and sell in a circle whose radius was 10 miles, having the city of Boston as a center. The undertaker, however, lived outside of this circle, within a territory owned by the plaintiff, and made use of the coffin lids in his business. The owner of the territory in which he carried on his business brought suit against him as an infringer, and the court held that, the sale having been made by a person who had full right to make, sell, and use within his own territory, such sale carried with it the right to the use of the machine without as well as within such territory. The action in this case was brought against the user, but the court announced a principle of law which is equally applicable to the seller. If the user of the article is not liable to the patentee, it is because he purchased it of a person who had the legal right to sell it, and, if it were legal for him to buy, it was equally legal for the other party to sell. In the opinion of the court, as well as the dissenting opinion in this case, it is stated in substance that the question raised was whether an assignment of a patented invention for a limited district, such as a city, county, or a state, conferred upon the assignee the right to sell the patented article to be used outside of such limited district. We have sought to distinguish this case from the one under consideration, by searching for evidence that the sale was made under the belief that the property was to be used within the territory of the seller; but neither in the report of the case in the supreme court, nor in the circuit, (1 Holmes, 40,) is there an intimation that the sale was made with the expectation that the property would be used or consumed within the territory. Indeed, the inference from the fact that the purchase was made by an undertaker, whose place of business must have been known to the manufacturer, is decidedly the other way. If the sale had been made innocently, the importance of this fact would certainly not have escaped the attention of the court and counsel; and we think we are bound to accept the case as authority for the broad proposition that the sale of a patented article by an assignee within his own territory carries the right to *use* it everywhere, notwithstanding the knowledge of both parties that a use outside of the territory is intended. The case was followed by Judge Coxe in *Hobbie* v. *Smith*, 27 Fed. Rep. 656, and by Judge Sawyer in *McKay* v. *Wooster*, 2 Sawy. 373. It may, perhaps, admit of some doubt, especially in view of the strong dissenting opinion in that case, whether this doctrine will be adhered to should the question ever be reargued; but, of course, the case is the law unto this court, and must be followed, until overruled by the court which pronounced the opinion. We think it covers the case under consideration, and consequently there must be a judgment for defendant, with costs.