## ADAMS *v.* BURKE.

1. Where a patentee has assigned his right to manufacture, sell, and use within a limited district an instrument, machine, or other manufactured product, a purchaser of such instrument or machine, when rightfully bought within the prescribed limits, acquires by such purchase the right to *use* it anywhere, without reference to other assignments of territorial rights by the same patentee.

2. The right to the *use* of such machines or instruments stands on a different ground from the right to make and sell them, and inheres in the nature of a contract of purchase, which carries no implied limitation of the right of use within a given locality.

APPEAL from the Circuit Court for the District of Massachusetts; the case being thus:

On the 26th day of May, 1863, letters-patent were granted

to Merrill & Horner, for a certain improvement in coffin-lids, giving to them the exclusive right of making, using, and vending to others to be used, the said improvement.

On the 13th day of March, 1865, Merrill & Horner, the patentees, by an assignment duly executed and recorded, assigned to Lockhart & Seelye, of Cambridge, in Middlesex County, Massachusetts, all the right, title, and interest which the said patentees had in the invention described in the said letters-patent, for, to, and in a circle whose radius is ten miles, having the city of Boston as a centre. They subsequently assigned the patent, or what right they retained in it, to one Adams.

Adams now filed a bill in the court below, against a certain Burke, an undertaker, who used in the town of Natick (a town about seventeen-miles from Boston, and therefore outside of the circle above mentioned) coffins with lids of the kind patented, alleging him to be an infringer of their patent, and praying for an injunction, discovery, profits, and other relief suitable against an infringer.

The defendant pleaded in bar:

"That he carries on the business of an undertaker, having his place of business in Natick, in said district; that, in the exercise of his said business, he is employed to bury the dead; th᷂ when so employed it is his custom to procure hearses, coffins, and whatever else may be necessary or proper for burials, and to superintend the preparation of graves, and that his bills for his services in each case, and the coffin, hearse, and other articles procured by him, are paid by the personal representatives of the deceased; that, since the date of the alleged assignment to the plaintiff of an interest in the invention secured by the said letters-patent, he has sold no coffins, unless the use of coffins by him in his said business, as above described, shall be deemed a sale; has used no coffins, except in his said business as aforesaid; and has manufactured no coffins containing the said invention; and that since the said date he has used in his business as aforesaid, in Natick, no coffin containing the invention secured by said letters-patent, except such coffins containing said invention as have been manufactured by said Lockhart & Seelye, within a circle, whose radius is ten miles, having the

city of Boston as its centre, and sold within said circle by said Lockhart & Seelye, without condition or restriction."

The validity of this plea was the question in the case. The court below, referring to the case of *Bloomer* v. *McQuewan*,[*] in which Taney, C. J., delivering the opinion of the court, said:

" When a machine passes to the hands of the purchaser, it is no longer within the limits of the monopoly. It passes outside of it, and is no longer under the protection of the act of Congress."

And referring also to some other cases, held that the plea was good. And from a decree which followed, dismissing, of course, the bill, this appeal was taken.

*Mr. C. B. Goodrich, for the appellant; Messrs. R. H. Dana and L. S. Dabney, contra.*

Mr. Justice MILLER delivered the opinion of the court.

The question presented by the plea in this case is a very interesting one in patent law, and the precise point in it has never been decided by this court, though cases involving some of the considerations which apply to it have been decided, and others of analogous character are frequently recurring. The vast pecuniary results involved in such cases, as well as the public interest, admonish us to proceed ith care, and to decide in each case no more than what is directly in issue.

We have repeatedly held that where a person had purchased a patented machine of the patentee or his assignee, this purchase carried with it the right to the use of that machine so long as it was capable of use, and that the expiration and renewal of the patent, whether in favor of the original patentee or of his assignee, did not affect this right. The true ground on which these decisions rest is that the sale by a person who has the full right to make, sell, and use such a machine carries with it the right to the use of that machine to the full extent to which it can be used in point of time.

---

[*] 14 Howard, 549.

The right to manufacture, the right to sell, and the right to use are each substantive rights, and may be granted or conferred separately by the patentee.

But, in the essential nature of things, when the patentee, or the person having his rights, sells a machine or instrument whose sole value is in its use, he receives the consideration for its use and he parts with the right to restrict that use. The article, in the language of the court, passes without the limit of the monopoly.* That is to say, the patentee or his assignee having in the act of sale received all the royalty or consideration which he claims for the use of his invention in that particular machine or instrument, it is open to the use of the purchaser without further restriction on account of the monopoly of the patentees.

If this principle be sound as to a machine or instrument whose use may be continued for a number of years, and may extend beyond the existence of the patent, as limited at the time of the sale, and into the period of a renewal or extension, it must be much more applicable to an instrument or product of patented manufacture which perishes in the first use of it, or which, by that first use, becomes incapable of further use, and of no further value. Such is the case with the coffin-lids of appellant's patent.

It seems to us that, although the right of Lockhart & Seelye to manufacture, to sell, and to use these coffin-lids was limited to the circle of ten miles around Boston, that a purchaser from them of a single coffin acquired the right to use that coffin for the purpose for which all coffins are used. That so far as the use of it was concerned, the patentee had received his consideration, and it was no longer within the monopoly of the patent. It would be to engraft a limitation upon the right of use not contemplated by the statute nor within the reason of the contract to say that it could only be used within the ten-miles circle. Whatever, therefore, may be the rule when patentees subdivide territorially their patents, as to the exclusive right *to make* or *to sell* within a

---

* Bloomer *v.* McQuewan, 14 Howard, 549; Mitchell *v.* Hawley, 16 Wallace, 544.

limited territory, we hold that in the class of machines or implements we have. described, when they are once lawfully made and sold, there is no restriction on their *use* to be implied for the benefit of the patentee or his assignees or licensees.

A careful examination of the plea satisfies us that the defendant, who, as an undertaker, purchased each of these coffins and used it in burying the body which he was employed to bury, acquired the right to this use of it freed from any. claim of the patentee, though purchased within the ten-mile circle and used without it.

The decree of the Circuit Court dismissing the plaintiff's bill is, therefore,

AFFIRMED.

Mr. Justice BRADLEY (with whom concurred Justices SWAYNE and STRONG), dissenting:

The question raised in this case is whether an assignment of a patented invention for a limited district, such as a city, a county, or a State, confers upon the assignee the right to sell the patented article to be used outside of such limited district. The defendant justifies under such a claim. He uses a patented article outside of the territory within which the patent was assigned to the persons from whom he purchased it. The plaintiff, who claims under the original patentee, complains that this is a transgression of the limits of the assignment.

If it were a question. of legislative policy, whether a patentee should be allowed to divide up his monopoly into territorial parcels, it might admit of grave doubt whether a vendee of the patented article purchasing it rightfully, ought to be restrained or limited as to the place of its use. But the patent act gives to the patentee a monopoly of use, as well as of manufacture, throughout the whole United States; and the eleventh section of the act (of 1836) expressly authorizes not only an assignment of the whole patent, or any undivided part thereof, but a " grant and conveyance of the exclusive right under any patent, to make and *use*, and to

grant to others to make and use the thing patented within and throughout any specified part or portion of the United States."*

If an assignment under this clause does not confer the same rights within the limited district which the patentee himself previously had in the whole United States, and no more, it is difficult to know what meaning to attach to language however plain.

On the 26th day of May, 1863, letters-patent were granted to Merrill & Horner, for a certain improvement in coffin-lids, giving to them the exclusive right of making, using, and vending to others to be used, the said improvement.

On the 13th day of March, 1865, Merrill & Horner, the patentees, by an assignment duly executed and recorded, did assign to Lockhart & Seelye, of Cambridge, in Middlesex County, Massachusetts, all the right, title, and interest which the said patentees had in the invention described in the said letters-patent, for, to, and in a circle whose radius is ten miles, having the city of Boston as a centre. By necessary consequence (as it seems to me), the right thus assigned consisted of the exclusive right to make, use, and vend the improved coffin-lid within the limited territory described; but did not include any right to make, use, or vend the same outside of those limits. As the assigned right to make the lids was a restricted right, limited to the territory; so the assigned right to use them was a restricted right limited in the same manner. Each right is conveyed by precisely the same language. A different construction would defeat the intent of the parties. For if the assignees, after making any number of lids within the limited district, could use them or authorize others to use them outside of the district, the balance of the monopoly remaining in the hands of the patentees might be rendered of little value.

If it be contended that the right of vending the lids to others enables them to confer upon their vendees the right

---

* Washburn *v.* Gould, 3 Story, 131; Blanchard *v.* Eldridge, 1 Wallace, Jr., 339.

to use the lids thus sold outside of the limited district, the question at once arises, how can they confer upon their vendees a right which they cannot exercise themselves? The only consistent construction to be given to such an assignment is, to limit all the privileges conferred by it to the district marked out. It is an assignment of the manufacture and use of the patented article within that district, and within that district only.

Difficulties may, undoubtedly, be suggested in special cases. If the patented thing be an article of wearing apparel, sold by the assignee within his district, it is confidently asked, cannot the purchaser wear the article outside of the district? The answer to acute suggestions of this sort would probably be found (in the absence of all bad faith in the parties) in the maxim *de minimis non curat lex.*

On the other hand, the difficulties and the injustice which would follow from a contrary construction to that which I contend for, are very obvious. Take the electric telegraph, for example. Suppose Professor Morse had assigned his patent within and for the New England States. Would such an assignment authorize the vendees of his assignees to use the apparatus in the whole United States? Take the planing machine: would an assignment from Woodworth of his patent within and for the State of Vermont, authorize the assignees to manufacture machines *ad libitum*, and sell them to parties to be used in other States? So of Hoe's printing press, and a thousand other machines and inventions of like sort.

Such a doctrine would most seriously affect not only the assignor (as to his residuary right in his patent), but the assignee also. For if it be correct, there would be nothing to prevent the patentee himself, after assigning his patent within a valuable city or other locality, from selling the patent machine or article to be used within the assigned district. By this means, the assignment could be, and in numberless instances would be, rendered worthless. Millions of dollars have been invested by manufacturers and mechanics in these limited assignments of patents in our manufacturing

districts and towns, giving them, as they have supposed, the monopoly of the patented machine or article within the district purchased. The decision of the court in this case will, in my view, utterly destroy the value of a great portion of this property.

I do not regard the authorities cited as establishing a different doctrine from that now contended for. The remark of Chief Justice Taney, in *Bloomer* v. *McQuewan*, that "when a machine passes to the hands of a purchaser, it is no longer within the limits of the monopoly; it passes outside of it, and is no longer under the protection of the act of Congress," is perfectly true in the sense and application in which the Chief Justice made it. He was speaking of time, not territory; of the right to use a machine after the original patent had expired and a renewal had been granted, not of using it in a place outside of the grant. All the effects mentioned by the Chief Justice would undoubtedly follow so far forth as it was in the power of the vendor to produce them, but no further. And he would never have contended that those effects would follow any further than the vendor's power to produce them extended. That is the very question in this case. How far did the assignee's interest and, therefore, his power extend? In my judgment it was limited in locality, both as to manufacture and use, and that he could not convey to another what he did not have himself. I hold, therefore, that the decree should be reversed.