## SHELDON AXLE CO. *v.* STANDARD AXLE-WORKS.

*(Circuit Court, E. D. Pennsylvania.* February 21, 1889.)

1. PATENTS FOR INVENTIONS—ASSIGNMENT AND LICENSE—SUBSEQUENT PURCHASERS OF ARTICLE.

Where patentees transfer all their right and interest within specified territorial limits, together with any improvements and reissues which may thereafter be made or granted, subsequent purchasers, from the patentees, of the patented articles, with notice of such assignment, take subject to the rights of the assignees, and cannot use the articles within their territory.

2. SAME—NOTICE.

Where such purchasers purchase the patentees' remaining interest, knowing that the assignees have an interest, and, on being informed by the latter of the extent of their interest, renounce the contract, and purchase the articles, they will be held to have had actual notice of the assignment, though they testify that the patentees denied the assignees' statement respecting their interest.

In Equity. Bill by the Sheldon Axle Company against the Standard Axle-Works, to restrain defendant from using a certain patented machine within territory claimed exclusively by complainant.

*John R. Bennett,* for complainant.

*Fleming & McCarrell,* for defendant.

BUTLER, J. The principal objections made to the plaintiff's title are met by the amendment to the record just filed. The transfer from the Philadelphia Axle Company is properly executed. The state statute relating to the execution of deeds by such companies has application to transfers of real estate.

The plaintiffs owned the interest acquired by the Philadelphia Axle Company. The patentees transferred to this company all their right and interest in the patent, and any improvements and reissues which might thereafter be made or granted, within the territorial limits specified in the transfer. The company thus took the exclusive monopoly of the manufacture, use, and sale within these limits. The patentees thereafter could not interfere with the enjoyment of this monopoly, and consequently could not authorize any one else to do so. Subsequent assignees of interests, and purchasers of machines, (with notice,) took subject to the company's rights. This seems entirely clear. It is urged, however, that *Adams* v. *Burke,* 17 Wall. 453, decides other-

wise, as respects the use of machines subsequently purchased; that such use may be enjoyed within this territory. It would be strange, indeed, if this were so. It is as clear as language can make it that the right to use within the territory is as distinctly conveyed as the right to manufacture and sell. It is not, of course, questioned that the latter right cannot be interfered with. On what ground, then, can such a distinction be supported? None has been suggested, and we can see none. It is urged, however, that this distinction is drawn in *Adams* v. *Burke*. We do not so understand that case. There the patentees assigned their right to manufacture, use, and sell, within certain territorial limits, and subsequently transferred their remaining interest to another. The patented article was a coffin lid. The purchaser of a lid from the first assignee used it outside the prescribed limits. Of this use the second assignee complained. The question thus raised was one of construction. Its decision turned on the interpretation of the first assignment. If the use of lids sold under this instrument was intended to be confined to the territory named, the complaint was well founded; otherwise it was not. The court (laying stress on the character of the article,—the fact that it is incapable of continuous use) held that the use was not intended to be so confined; that the right to sell (which is distinct from the right to manufacture and use) contemplated a use of the lids sold, everywhere; consequently that the second assignee took subject to this right, and therefore had no just cause of complaint. The case stands on this interpretation of the contract. The court says: "It would ingraft a limitation not contemplated, * * * nor within the reason of the contract, to say that it [the lid] could only be used within the ten-mile circle," to which the right of sale was confined. This construction seems to rest on the conclusion that as a sale by the patentees before assigning, conferred a right to such unrestricted use, the assignment of their authority to sell conferred on purchasers under it the same unrestricted use. The court distinguished (as it had done before) between the right to manufacture and use and the right to sell, and held that the territorial limitation was not intended to restrict the use of lids sold. What is said in this case of the patentee's "receipt of compensation for the use outside the territory," of a sale "emancipating the patented article from the monopoly," etc., was applicable there, but it is inapplicable to the case before us. The defendants here did not pay for a use within the plaintiffs' territory,—a use which they knew the patentees had previously sold and received compensation for. Their purchase could not emancipate the machine from a monopoly which their vendors did not own and could not interfere with. The distinction (which seems to be broad and plain) between our case and *Adams* v. *Burke* consists in the facts that the assignment here (under which the plaintiffs hold) is first in the order of time, conferring upon them the entire monopoly of the patent within their territory, and that the second assignment (under which the defendants hold) is subject to this; while in *Adams* v. *Burke* the plaintiff's assignment was subsequent to that under which the defendant purchased,—by which latter assignment, as the court held, a right was transferred to

use the article so purchased everywhere. The situation of the parties in *Adams* v. *Burke* is here reversed, which makes all the difference in the world,—rendering the decision in that case wholly inapplicable to this. Other decisions of the supreme court, cited by the defendants, lend no support to their position. *Bloomer* v. *McQuewan*, 14 How. 549, determines no more than that the lawful purchase of a patented machine confers a right to use it until worn out, notwithstanding the patent may have expired and been renewed in the mean time. General observations made by the court in disposing of such a case can have no influence in deciding the question before us. *Chaffee* v. *Belting Co.*, 22 How. 217, and *Mitchell* v. *Hawley*, 16 Wall. 544, are equally inapplicable; the facts involved bear no relation to those before us. Nor are the cases cited from the circuit courts entitled to greater influence. We had occasion to consider them in *Hatch* v. *Adams*, 22 Fed. Rep. 434, and nothing need be added to what is there said on the subject.

The foregoing is predicated on the supposition that the defendants and their predecessors, Ives and Miller, had knowledge of the previous assignment to the Philadelphia Axle Company. Had they such knowledge? Notice may be actual or constructive. The latter (which results from an authorized record) Ives and Miller had not. The duty of recording was neglected until after they had purchased. It is entirely clear, however, that they had actual notice. A review of the testimony respecting this is unnecessary. The fact is abundantly proved. Ives and Miller first purchased the patentee's entire remaining interest, some months after the transfer to the company, with knowledge that the latter had an interest; and later, on being informed by the company of the character and extent of this interest, they refused to pay the consideration, returned the property, and entered into a contract for 20 machines, one of which was sold to the defendants, brought within the plaintiffs' territory, and used. It is unimportant that Mr. Miller says the patentees denied the company's statement respecting its interest. The latter was not required to do more than inform Ives and Miller of it. Ives and Miller, however, acted as if they believed it; declining to carry out their contract, and returning the property. It is unnecessary in this case to invoke the rule that knowledge of facts sufficient to put a prudent man to inquiry is notice. Direct, explicit notice is proved. That the defendants also had notice (constructive as well as actual) is equally clear. The assignment was on record several years before their purchase; and the evidence abundantly shows that they had actual knowledge of the plaintiffs' rights. Their correspondence with Ives and Miller puts this beyond doubt. It shows not only that they were fully apprised of these rights, but that they directed their most earnest efforts to the discovery of means whereby the enjoyment of them might be circumvented and defeated. They were slow to believe that a purchase outside this territory would confer a right to use the machine within, (in view of the exclusive right vested in the plaintiffs,) and they consequently demanded a guaranty from Ives and Miller. This being refused, however, they resolved to take the risk. A decree must be entered for the plaintiffs.