### JACKSON v. VAUGHAN.

(Circuit Court, N. D. California. March 16, 1896.)

#### No. 11,877.

PATENTS—PURCHASE FROM TERRITORIAL LICENSEE—SALE IN OTHER TERRITORY.
A dealer in territory reserved by the patentee may purchase the patented articles from a licensee of other territory, through an agent in such territory, and import and resell them in the reserved territory, without infringing any rights of the patentee; and it is immaterial that such dealer may have knowledge of a contract whereby such licensee has agreed not to sell, or permit the sale, directly or indirectly, of his articles in such reserved territory. Keeler v. Folding-Bed Co., 15 Sup. Ct. 738, 157 U. S. 659, applied.

Suit in equity for infringement in importing, using, and selling horse hayforks in the state of California, and to restrain the further sale of the same.

J. P. Langhorne, for complainant.

J. H. Miller, for respondent.

MORROW, District Judge. This is a suit in equity, brought by Byron Jackson against F. W. Vaughan, for alleged infringement of letters patent Nos. 197,137 and 210,548, for improvements in horse hayforks, in importing, using, and selling said hayforks in the state of California. The facts show that Jackson is the owner of the patents referred to on horse hayforks; that Jackson licensed F. E. Myers & Bros., of Ashland, in the state of Ohio, to exclusively manufacture and sell horse hayforks, under said patents, within the territory of the United States lying east of the Rocky Mountains, said license to run during the lifetime of the patents. In consideration of this license to manufacture and sell exclusively within said territory, F. E. Myers & Bros. agreed with the complainant as follows:

"We further agree that we will not, directly or indirectly, permit any of said horse hayforks made by us to be sold west of a line drawn north and south along the western margin of the great Salt Lake Valley, and extended from thence north and south across the territory of the United States. We further agree to abandon all agencies for the sale of horse hayforks manufactured by us west of the line last above described."

A letter accompanying this license from F. E. Myers & Bros. to the complainant is as follows:

"Ashland, Ohio, August 23, 1889.

"Byron Jackson, Esqr., San Francisco, Cal.—Dear Sir: In consideration of your numerous claims on your Jackson light weight horse hayforks, the validity of which we have examined in detail, and which we hereby acknowledge, we have agreed to abandon the manufacture of our California forks, and to manufacture under your patents exclusively, and to pay you a royalty thereon. We also agree not to permit the sale of said forks, directly or indirectly, on the Pacific coast; we to abandon agencies that trespass or violate this agreement on first notification from you.

"Yours, respectfully,                    [Signed]  F. E. Myers & Bros."

The respondent, Vaughan, is the manager, in San Francisco, of the Deere Implement Company, which deals in agricultural implements. This company was incorporated in Illinois, under the laws of that state, with headquarters at Moline. It has a branch in this city, of which, as stated, the respondent is the manager. The infringement complained of was involved in the following transaction: Vaughan sent an order for 100 horse hayforks, covered by Jackson's patents, to the Deere Implement Company, in Moline, Ill., which, in turn, ordered and bought them from F. E. Myers & Bros., and then shipped them to San Francisco, where the respondent has been engaged in selling them, without having been licensed or permitted so to do by Jackson. It was further stipulated by counsel for the respective parties:

"That when the respondent in this cause ordered the consignment of 100 hayforks, to which he has testified, he ordered the same through the firm of Deere & Co. of Minneapolis, and not directly from the firm of Myers & Bros., of Ashland, Ohio, for the purpose of having it appear that the said forks were purchased by parties east of the Rocky Mountains from Myers & Bros., and by such persons sold to the Deere Implement Co. of California, and that such purchase was really a purchase by the Deere Implement Co., through the respondent in California, of said forks from Myers & Bros., and that said Deere Implement Co. of Minneapolis was merely an agent in the matter of said purchase and shipment."

The territory west of the Rocky Mountains had been reserved by Jackson for his own use; that is to say, he had not licensed this territory to the respondent, or to any one else.

The question is, whether the respondent, Vaughan, has the right to purchase the forks covered by Jackson's patents from a territorial licensee of another territory, and to ship and sell them outside of that territory, and in a district reserved by the patentee to himself, without first obtaining the consent or license from the patentee to do so. The complainant contends that such conduct on the part of the respondent is in violation of his rights as a patentee under the patent law; that it is, therefore, an infringement; and that he is entitled to damages for the forks so sold, and to an injunction restraining further sales by the respondent of forks so imported.

The respondent, on the other hand, contends that F. E. Myers & Bros., being licensed to sell within their territory,—that is, in the United States lying east of the summit of the Rocky Mountains,— were authorized, and had the unquestioned right, to sell within that territory; that he had a right to purchase from them within that territory; and that such purchase, through the Deere Implement Company, as agents, vested in him, as purchaser, an absolute property therein, unrestricted in time or place, and that the sale of such articles within the state of California by the respondent, as manager of the Deere Implement Company, does not constitute an infringement of the complainant's patent, nor an invasion of any rights thereunder. The authorities in the circuit courts have, with but few exceptions, held that such a course as that pursued by the respondent in this case constituted an infringement. The decisions so holding are summed up by Judge Hawley in Electrical Works v. Finck, 47 Fed. 583, where he adhered to the prevailing rule enunciated in those courts as follows:

"The sale of the patented articles by a territorial assignee within his own territory does not confer upon the purchaser of such articles the right to carry the same into the territory of another assignee, and there sell them in the usual course of trade, without the consent or license of the latter assignee. Although the question has never been authoritatively settled by any decision of the supreme court of the United States, it has frequently been held in the circuit courts that where one purchases a patented article from the owner of the patent right for a certain territory, he has no right to sell the same in the course of trade, in a territory for which another owns the exclusive territorial rights. Hatch v. Adams, 22 Fed. 436; Hatch v. Hall, Id. 438, 30 Fed. 613; Folding-Bed Co. v. Keeler, 37 Fed. 693, 41 Fed. 51; Sheldon Axle Co. v. Standard Axle Works, 37 Fed. 789."

But since the views of that learned judge were expressed, the supreme court, in one of the very cases cited by him, viz. Folding-Bed Co. v. Keeler, 37 Fed. 693, 41 Fed. 51, has overruled the doctrine followed by the circuit courts. The title of the case on appeal is Keeler v. Folding-Bed Co., 157 U. S. 659, 15 Sup. Ct. 738.

Before noticing that case, it may be well to refer to a few propositions of patent law established by the supreme court, which are important in this controversy. In the first place, it is now well settled that one who buys patented articles of manufacture from one authorized to sell them at the place where they are sold becomes possessed of an absolute property in such articles, unrestricted in time or place. Wilson v. Rousseau, 4 How. 646, 688; Bloomer v. Mcquewan, 14 How. 539; Chaffee v. Belting Co., 22 How. 217, 223; Mitchell v. Hawley, 16 Wall. 544; Adams v. Burke, 17 Wall. 453, 456; Birdsell v. Shaliol, 112 U. S. 485, 487, 5 Sup. Ct. 244; Hobbie v. Jennison, 149 U. S. 355, 13 Sup. Ct. 879. The reason of the rule is stated in Chaffee v. Belting Co. as follows:

"When the patented machine rightfully passes to the hands of the purchaser from the patentee, or from any other person by him authorized to convey it, the machine is no longer within the limits of the monopoly. According to the decisions of this court in the cases before mentioned, it then passes outside of the monopoly, and is no longer under the peculiar protection granted to patented articles. By a valid sale and purchase, the patented machine becomes the private individual property of the purchaser, and is

no longer protected by the laws of the United States, but by the laws of the state in which it is situated. Hence it is obvious that if a person legally acquires a title to that which is the subject of letters patent, he may continue to use it until it is worn out, or he may repair it or improve upon it, as he pleases, in the same manner as if dealing with property of any other kind."

In Goodyear v. Rubber Co., 1 Cliff. 348, Fed. Cas. No. 5,557, Mr. Justice Clifford, then sitting in the circuit court, used the following language:

"Whether the inventor in any given case has a patent for the article manufactured, or only for the product or the material of which it is composed, the unconditional sale of the manufactured article carries with it the absolute dominion over the material, as well as over the manufactured article. Having manufactured the material, and sold it for a satisfactory compensation, whether as material, or in the form of a manufactured article, a patentee, so far as that quantity of the product of his invention is concerned, has enjoyed all the rights secured to him by his letters patent; and the manufactured article, and the material of which it is composed, go to the purchaser for a valuable consideration, discharged of all the rights of the patentee previously attached to it, or impressed upon it by the act of congress under which the patent was granted."

In that case the question arose as to whether the respondents had the right, after having purchased certain patented articles of a licensee, to use the materials or product of which such articles were made for the purpose of making other articles, the right to which was covered by patent. The articles so made by the respondents were different from those made by the complainant, but they used the very same materials which went to make up the articles manufactured by complainant. It was claimed by the latter that his patent covered, not only the articles made, but also the materials or product out of which they were made. The respondents contended that the material used by the complainant had once been publicly sold by the license and permission of the complainant, that he had been paid a price satisfactory to himself, and that he could not therefore forbid or prevent the use of it by lawful purchasers for a lawful purpose. The court, as indicated in the language quoted above, sustained the contention of the respondents, and held that a sale by the patentee, or one authorized to sell, took the article out of the monopoly which the United States laws grant to patentees for a limited period of time, and that such sale covered, not only the article manufactured by the inventor, but the materials out of which such article was made.

In the cases of Adams v. Burke and Hobbie v. Jennison, both cited supra, the supreme court distinctly held that a purchase from a territorial assignee did not interfere with the right of the purchaser to use the patented article outside of the territory of such assignee, and in the territory of another assignee; and knowledge of the fact by the purchaser that there was an assignee for the territory into which the patented article was brought for use was held, in the last case, to make no difference in the application of the doctrine. In Keeler v. Folding-Bed Co., supra, there was held to be no distinction, in principle, between the use and sale of a patented article outside of the territory in which it was bought by the pur-

chaser, though such use or sale might be in the territory of another assignee. This case involved a state of facts very similar to those which exist in the case now before the court. By the agreed statement of facts, it appeared that the complainants in that case were the assignees, for the state of Massachusetts, of certain letters patent granted to one Lyman Welch, for an improvement in wardrobe bedsteads, that the Welch Folding-Bed Company owned the patent right for the state of Michigan, and that the defendants purchased a carload of said beds from the Welch Folding-Bed Company, at Grand Rapids, Mich., for the purpose of selling them in Massachusetts, and that they afterwards sold, and were engaged in selling, the said beds in Boston. The conclusion in the court below (see Folding-Bed Co. v. Keeler, 37 Fed. 693, 41 Fed. 51) was that the defendants were not protected from the claim of the Massachusetts assignee by having purchased the patented articles from the Michigan assignee, and accordingly there was an injunction and final decree in favor of the complainants, from which an appeal was taken to the supreme court. In the opinion of that court, delivered by Mr. Justice Shiras, the absolute right of property which a purchaser of a patented article acquires therein was affirmed in clear and unmistakable terms. After referring to provisions in sections 4884 and 4898 of the Revised Statutes, giving the patentee the exclusive right to make, use, and vend his patented articles for a certain number of years, and to assign such right exclusively to the whole, or any specified part, of the United States, the opinion proceeds as follows:

"Where the patentee has not parted, by assignment, with any of his original rights, but chooses himself to make and vend a patented article of manufacture, it is obvious that a purchaser can use the article in any part of the United States, and, unless restrained by contract with the patentee, can sell or dispose of the same. It has passed outside of the monopoly, and is no longer under the peculiar protection granted to patented rights. * * * Suppose, however, the patentee has exercised his statutory right of assigning, by conveying to another an exclusive right under the patent to a specified part of the United States, what are the rights of a purchaser of patented articles from the patentee himself within the territory reserved to him? Does he thereby obtain an absolute property in the article, so that he can use and vend it in all parts of the United States, or, if he take the article into the assigned territory, must he again pay for the privilege of using and selling it? If, as is often the case, the patentee has divided the territory of the United States into twenty or more specified parts, must a person who has bought and paid for the patented article in one part, from a vendor having an exclusive right to make and vend therein, on removing from one part of the country to another, pay to the local assignee for the privilege of using and selling his property, or else be subjected to an action for damages as a wrongdoer? And is there any solid distinction to be made, in such a case, between the right to use and right to sell? Can the owner of the patented article hold and deal with it the same as in case of any other description of property belonging to him, and, on his death, does it pass, with the rest of his personal estate, to his legal representatives, and thus, as a part of the assets to be administered, become liable to be sold? These are questions which, although already, in effect, answered by this court in more cases than one, are now to be considered in the state of facts disclosed in this record."

After referring to the cases in the supreme court on the subject of the rights which a purchaser of patented articles obtains, the learned justice continues:

"This brief history of the cases shows that in Wilson v. Rousseau, 4 How. 646, and cases following it, it was held that, as between the owner of a patent, on the one side, and a purchaser of an article made under the patent, under the other, the payment of royalty once, or, what is the same thing, the purchase of the article from one authorized by the patentee to sell it, emancipates such article from any further subjection to the patent throughout the entire life of the patent, even if the latter should be by any law subsequently extended beyond the term existing at the time of the sale: and that in respect of the time of enjoyment, by those decisions, the right of the purchaser, his assigns or legal representatives, is clearly established to be entirely free from any further claim of the patentee or any assignee; that in Adams v. Burke, 17 Wall. 453, it was held that, as respects the place of enjoyment, and as between the purchaser of patented articles in one specified part of the territory, and the assignee of the patent of another part, the right, once legitimately acquired, to hold, use, and sell, will protect such purchaser from any further subjection to the monopoly; that in Hobbie v. Jennison, 149 U. S. 355, 13 Sup. Ct. 879, it was held that, as between assignees of different parts of the territory, it is competent for one to sell the patented articles to persons who intend, with the knowledge of the vendor, to take them for use into the territory of the other. Upon the doctrine of these cases, we think it follows that one who buys patented articles of manufacture from one authorized to sell them becomes possessed of an absolute property in such articles, unrestricted in time or place."

The views expressed would seem to be conclusive of this case. But the learned justice immediately follows the above statement of the law with a reservation, which, counsel for complainant claims, renders what the court decided inapplicable to the facts of this case. It is as follows:

"Whether a patentee may protect himself and his assignees by special contracts brought home to the purchasers is not a question before us, and upon which we express no opinion. It is, however, obvious that such a question would arise as a question of contract, and not as one under the inherent meaning and effect of the patent laws."

The precise significance of this reservation, in view of the broad and unambiguous language used in defining the absolute and unqualified property rights which a purchaser of patented articles acquires, it is not necessary to determine. The facts of that case, as is clearly indicated in the dissenting opinion of Mr. Justice Brown, established that the Standard Folding-Bed Company, doing business in Massachusetts, purchased articles of the patentee in Michigan, in the ordinary course of trade, for the purpose of resale in Massachusetts, knowing that the right to manufacture, use, and sell such articles within that state belonged to another. Whatever idea the court meant to convey by the expression "special contracts brought home to the purchaser," it does not appear to be applicable to this case. It is certain that there was nothing in the terms of the license to F. E. Myers & Bros. restraining a purchaser from selling, or otherwise disposing of, the vended articles in the territory reserved by the patentee to himself. It is true that Myers & Bros., the licensees, were prohibited by the patentee, and they agreed not to permit the horse hayforks covered by Jackson's patents to be sold, directly or indirectly, west of the Rocky Mountains. But there is nothing in the patent laws which restricts a purchaser of patented articles to any particular territory. Nor is this view prejudicial to the rights of a patentee. As was well said by Mr. Justice Shiras, in the concluding part of the opinion in the above case:

"The conclusion reached does not deprive a patentee of his just rights, because no article can be : fettered from the claim of his monopoly without paying its tribute. The inconvenience and annoyance to the public that an opposite conclusion would occasion are too obvious to require illustration."

It follows, therefore, that the controversy between complainant and respondent, in this case, does not arise "under the inherent meaning and effect of the patent laws," but is "a question of contract." The license to Myers & Bros. provided that they should not permit the patented hayforks to be sold, directly or indirectly, west of the Rocky Mountains; but Vaughan was not a party to this license. He was a perfect stranger to any contractual relation that existed between the patentee and his licensees. It was not binding on him, or any other purchaser not a party to the contract. It is a rule of the law of contracts, so elementary that it need hardly be stated, that one not a party to a contract is not bound by it, or his legal rights affected thereby to his prejudice. Conceding that, in the case at bar, the terms of the "special contract" between the patentee, Jackson, and his licensees, Myers & Bros., had been "brought home" to the respondent,—that is, that he knew of the agreement by Myers & Bros. not to permit hayforks to be sold west of the Rocky Mountains,—it is difficult to see how that knowledge could impair his right to purchase from the licensees within their territory, or affect his absolute right of property in the vended articles, unrestricted in time or place. No consideration passed from him that he would refrain from purchasing articles east of the Rocky Mountains from F. E. Myers & Bros., or that, having purchased such articles, he would not sell them in the ordinary course of trade; and his knowledge of the terms of the license did not render him subject thereto. The case might be different had the respondent knowingly purchased from some one who had no authority to sell, and the patentee thus been defrauded of his royalty. But such is not the case here. Vaughan purchased the horse hayforks at Ashland, state of Ohio, from Myers & Bros., who, undeniably, had the authority to sell east of the Rocky Mountains. Having purchased them, he obtained an absolute property in them, "unrestricted in time or place." McKay v. Wooster, 2 Sawy. 373, Fed. Cas. No. 8,847, and cases cited supra. He had the right to put them to any use, or dispose of them, as he saw fit. The patentee could not complain. The forks had, by the sale from the authorized licensee east of the Rocky Mountains, passed outside of the monopoly. The object of the patent laws, and the protection afforded the patentee by them, had, so far as these particular horse hayforks were concerned, been attained and consummated. The patentee had received the royalty through his licensees. If the doctrine, repeatedly enunciated by the supreme court, that the sale of a patented article takes it out of the monopoly, is to obtain at all, it is certainly applicable to this case.

Such being my determination, it is obviously unnecessary to consider the other questions involved in the alleged infringement. The bill will be dismissed, with costs.