# Sylvester *v.* Simplex Engineering Company et al., Appellants.

Argued March 29, 1937.  Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Edgar W. McCallister,* of *Green & McCallister,* with him *Richard G. Miller* and *H. Gilmore Schmidt,* of *Miller & Schmidt,* for appellants.

*Charles M. Clarke,* with him *Donald G. Dalton* and *Paul D. and M. K. Carmichael,* for appellee.

OPINION BY MR. JUSTICE STERN, May 17, 1937:

Defendant corporation, Simplex Engineering Company (of which Chauncey E. Frazier, co-defendant, is president), is engaged in the making of equipment for the manufacture of glass and glass products. Its business consists largely of designing, constructing and installing lehrs. A lehr is a furnace in which glassware is annealed, that is, heated and then gradually cooled for the purpose of rendering it less brittle by removing strains created during the operation of moulding or blowing the glass. The company engaged plaintiff as a mechanical engineer. Subsequently it entered into a written agreement with him entitled "Contract to Assign Inventions," covering the rights of the parties in regard to inventions made by him during the period of his employment. The contract provided that such inventions were to become the company's property, and plaintiff agreed, whenever requested, to apply for letters patent and to assign the applications to the company.

The clause of the contract which gives rise to the present controversy is as follows: "As additional remuneration for said patents that may be issued, the Company agrees to pay to the Employee in addition to his salary the sum of 10% of the net profits that may be returned to the Company from the sale of such invention or patents, or the right to use the same."

Plaintiff filed a bill in equity for an accounting, asserting that he was the inventor of certain improvements in connection with glass manufacturing equipment upon which patents were granted; particularly,

that he was the inventor of a new type of annealing furnace for which a patent, No. 1,907,777, was obtained (in Frazier's name), and that the company manufactured and installed lehrs embodying this patent and made profits therefrom but refused to pay him the share to which he was entitled under the contract. An answer was filed and extensive testimony taken. The chancellor held that plaintiff was entitled to an accounting as to certain patents enumerated in the bill, but found that he was not the inventor of the lehr covered by patent No. 1,907,777. Both parties filed exceptions. Those of defendants were dismissed, but the court in banc sustained plaintiff's exceptions in regard to patent No. 1,907,777, finding that he contributed *part* of the conception embodied in this invention, and was entitled to half of the 10% of the profits stipulated by the contract. From the decree ordering an accounting in accordance with the court's findings and conclusions defendants have taken this appeal.

The first question is as to the proper construction of the phrase: "profits . . . from the sale of such invention or patents, *or the right to use the same.*" The "right to use the same" obviously means the right to use the invention or patents, but plaintiff contends that in the case of every sale and installation of the patented device the company impliedly gave to the purchaser the right to use the patent or invention embodied therein, and therefore plaintiff is entitled to an accounting for such sales. That the right to use an invention is an ordinary and necessary incident to a sale of the patented article cannot be doubted. "But, in the essential nature of things, when the patentee, or the person having his rights, sells a machine or instrument whose sole value is in its use, he receives the consideration for its use and he parts with the right to restrict that use. The article, in the language of the court, passes without the limit of the monopoly. *(Bloomer v. McQuewan,* 14 How. 549; *Mitchell v. Hawley,* 16 Wall. 544.) That is to say, the

patentee or his assignee having in the act of sale received all the royalty or consideration which he claims for the use of his invention in that particular machine or instrument, it is open to the use of the purchaser without further restriction on account of the monopoly of the patentees": *Adams v. Burke,* 17 Wall. 453, 456. Defendant, however, maintains that the "right to use" the invention or patents refers, not to the right of use conferred by virtue of the sale of the patented devices, but, independently of any such sale, to licenses directly granted by the company for making and vending the patented article.

In our opinion the chancellor and the court in banc correctly construed the contract in accordance with plaintiff's contention. Not only is such construction supported by a literal interpretation of the words employed, but it represents the likely intention of the parties. The company was not engaged in the granting of licenses under patents; its business was that of manufacturing and installing equipment. Instead of seeking income from royalties by conveying patent rights to competitors engaged in glass equipment manufacturing, it derived its profits from its own manufacturing operations. Presumably, however, it was able to obtain more for its products because of the monopoly gained through its patents. Plaintiff had no contractual right of control over the company's utilization or disposition of a patent after it was acquired, and it is not likely he would have contracted that he was not to be entitled to a share in the profits unless the company should choose to license its competitors instead of itself manufacturing and installing the patented equipment in accordance with its normal business usage.

The remaining question in the case is a factual one. Was plaintiff a co-inventor of the type of furnace for which Patent No. 1,907,777 was granted? The court in banc, including the chancellor who heard the case, unanimously found that he was, and a careful reading of the

testimony leads us to the same conclusion. It is true that this patent, which is for a furnace structure admitting of a more precise control and distribution of heat within the annealing chamber, involves merely a novel combination of old elements, but such a combination is patentable if it produces a new and useful result or an old result in a more advantageous manner. The granting of the patent prima facie establishes that it covered a new invention, and of course defendants themselves do not attack its validity. The only point of dispute is whether the invention embodied in it was the conception of Frazier or of plaintiff. Defendants say that practically all of its dominant features were contained in a lehr installed at Cambridge, Ohio, the drawings for which were completed before plaintiff entered the company's employ. Plaintiff, by his own testimony and that of other witnesses, maintained that he designed a lehr installed at the plant of the Maryland Glass Company, and it was the drawings of that construction which were made the basis of the application for the patent. There are striking admissions in a letter written by defendant Frazier to his son as to the utilization of "Julius' [plaintiff's] scheme" in the Maryland Glass Company installation. There is also apparent justification for plaintiff's argument that, if the features of the lehr covered by the patent were embraced in the Cambridge installation, which took place five years before the application for the patent, Frazier could not truthfully have sworn, as a prerequisite to obtaining it, that the improvement had not been in public use or on sale in the United States for more than two years prior to the time of the application. From all the evidence the court below found that "in the arrangement made of the flues by which the burning gases are carried to the tunnel flues, located at the bottom, there was an original idea, conceived by the plaintiff, . . . that was embodied in the patent." This finding, arrived at as the result of a painstaking and clear analysis of the testimony, and confirmed by our

own consideration of the record, is conclusive as to the fact.

Having determined that the patent represented a joint invention of plaintiff and Frazier, the court was justified in fixing plaintiff's share of profits at five per cent, half of that provided in the contract, this being based on a precedent set by the parties themselves in dealing with another patent, the ideas for which were contributed by both parties. The contract expressly includes within its scope inventions made or conceived by plaintiff, "whether solely or jointly with others."

In these proceedings we are not concerned with the proper method of calculating the profits to which plaintiff may be found to be entitled on an accounting. "The question as to whether a complainant in a bill of equity for an account is entitled to a decree for an accounting, is a preliminary one, and has nothing to do with what will ultimately be shown by the account. Once a plaintiff has made clear his right to an account, the decree for an accounting necessarily follows; the plaintiff in this threshold inquiry is not called upon to establish the amount due, only the right to have an investigation of what is due": *Underdown v. Underdown*, 270 Pa. 229. Apparently plaintiff concedes that he is not entitled to a participation in the profits made by defendant company merely in its capacity as manufacturer of lehrs, but solely in the additional profits resulting from its implied grant to purchasers of the right to use the patented appliances installed by it. The chancellor in his adjudication said: "It does not appear that a differentiation and separation between so much of the net receipts as would represent the profits of construction work done, and so much thereof as would represent the value of the right, given in the transaction to the customer, to use in the latter's manufacturing operations the patented machinery, or machinery in which was incorporated the invention or patents in question, would be impossible." And the court in banc properly ob-

served: "All these matters render it necessary, in order to determine, in connection with each transaction, what profits coming within the terms of the contract have been received, that we have before us the particular facts and circumstances of each transaction. These have not yet been gone into fully in the evidence, and the question of how much of such profit has been received upon each invention or patent to which the contract applies, was left by the adjudication, and will be left by the court in banc, to be determined in the accounting that is to be ordered, on the basis of the testimony to be taken in connection therewith, and is reserved for determination until then."

The decree is affirmed; costs to abide the termination of the proceedings.