# United States Court of Appeals for the Federal Circuit

---

**KEURIG, INCORPORATED,**
*Plaintiff-Appellant,*

v.

**STURM FOODS, INC.,**
*Defendant-Appellee.*

---

2013-1072

---

Appeal from the United States District Court for the District of Delaware in No. 10-CV-0841, Judge Sue L. Robinson.

---

Decided: October 17, 2013

---

MICHAEL A. ALBERT, Wolf, Greenfield & Sacks, P.C., of Phoenix, Arizona, argued for plaintiff-appellant. With him on the brief were GERALD B. HRYCYSZYN; and CHELSEA A. LOUGHRAN, of Boston, Massachusetts. Of counsel was KAREN E. KELLER, Shaw Keller, LLP, of Wilmington, Delaware.

ALLEN A. ARNTSEN, Foley & Lardner LLP, of Madison, Wisconsin, argued for defendant-appellee. With him on the brief were CRAIG S. FOCHLER, SCOTT R. KASPAR and

AARON J. WEINZIERL, of Chicago, Illinois; and KIMBERLY K. DODD, of Milwaukee, Wisconsin.

ERIK PAUL BELT, McCarter & English, LLP, of Boston, Massachusetts, for amicus curiae, Boston Patent Law Association. With him on the brief was KELLY A. GABOS.

_____

Before LOURIE, MAYER, and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* LOURIE.

Concurring opinion filed by *Circuit Judge* O'MALLEY.

LOURIE, *Circuit Judge.*

Keurig, Inc. ("Keurig") appeals from the decision of the United States District Court for the District of Delaware granting summary judgment that Sturm Foods, Inc. ("Sturm") does not infringe claim 29 of Keurig's U.S. Patent 7,165,488 (the "'488 patent") and claims 6–8 of Keurig's U.S. Patent 6,606,938 (the "'938 patent"). *Keurig, Inc. v. Sturm Foods, Inc.*, No. 10-841, 2012 WL 4049799 (D. Del. Sept. 13, 2012). Because the district court did not err in concluding that Keurig's patent rights were exhausted and hence were not infringed by Sturm, we affirm.

## BACKGROUND

Keurig manufactures and sells single-serve coffee brewers and beverage cartridges for use in those brewers. Consumers insert a cartridge into the brewer, hot water is forced through the cartridge, and a beverage is dispensed. Keurig owns the '488 and '938 patents directed to brewers and methods of using them to make beverages. Claim 6 of the '938 patent is representative of the method claims, which are the only claims at issue:

6. A method of brewing a beverage from a beverage medium contained in a disposable cartridge, comprising the following steps, in sequence:

(a) piercing the cartridge with a tubular outlet probe to vent the cartridge interior;

(b) piercing the cartridge with a tubular inlet probe;

(c) admitting heated liquid into the cartridge interior via the inlet probe for combination with the beverage medium to produce a beverage; and

(d) extracting the beverage from the cartridge interior via the outlet probe.

'938 patent col. 4 ll. 40–50. Claims 1–21 of the '488 patent and claims 1–5 of the '938 patent, which were not asserted in the instant case, recite apparatus claims directed to brewers. Keurig also holds at least one design patent directed to its own brand of cartridges, but that patent was not asserted here. *See Keurig, Inc. v. JBR, Inc.*, No. 11-11941, 2013 U.S. Dist. LEXIS 73845 (D. Mass. May 24, 2013) (alleging infringement of Keurig's U.S. Patent D502,362, *inter alia*).

Sturm manufactures and sells cartridges for use in Keurig's brewers under the brand name "Grove Square." Sturm does not make or sell brewers.

Keurig filed suit against Sturm, alleging, *inter alia*, that the use of Sturm's Grove Square cartridges in certain Keurig brewer models directly infringed method claim 29 of the '488 patent and method claims 6–8 of the '938 patent, and that Sturm induced and contributed to that infringement. Sturm asserted the affirmative defense of patent exhaustion and moved for summary judgment of noninfringement, which the district court granted. *Keurig*, 2012 WL 4049799, at *12.

The district court held that the Supreme Court's substantial embodiment test—providing that method claims are exhausted by sale of an unpatented component article if that article includes all the inventive aspects of the patented method and has no reasonable noninfringing use—did not apply to the facts of this case. *Id.* at *5–6. Instead, the court concluded that the exhaustion of Keurig's patent rights had been triggered by Keurig's initial authorized sale of a patented item that completely practiced the claimed invention, *viz.*, the brewer. *Id.* The court also noted that Keurig's method claims were not saved from exhaustion merely because a consumer could potentially use non-Keurig cartridges in a Keurig brewer in a noninfringing way. *Id.* at *6.

The district court then severed the remaining non-patent issues and entered final judgment on its patent exhaustion-related decision pursuant to Federal Rule of Civil Procedure 54(b). *Keurig, Inc. v. Sturm Foods, Inc.*, No. 10-841 (D. Del. Nov. 2, 2012), ECF No. 371. Keurig timely appealed. We accept the district court's Rule 54(b) certification of this partial judgment and exercise jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the grant of summary judgment under the law of the regional circuit in which the district court sits, here, the Third Circuit. *Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011). The Third Circuit reviews the grant of summary judgment without deference, drawing all reasonable inferences in favor of the nonmovant. *Nicini v. Morra*, 212 F.3d 798, 805–06 (3d Cir. 2000) (en banc); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Keurig argues that the district court erred by declining to apply the substantial embodiment test articulated by the Supreme Court in *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008), which Keurig insists is the only relevant analysis for exhaustion of its asserted method claims. Keurig maintains that, under the *Quanta* test, its rights were not exhausted because its brewers are capable of many uses that do not infringe the asserted method claims, specifically when used with reusable cartridges that have premade holes and therefore are not pierced during brewing. Keurig further contends that exhaustion must be adjudicated on a claim-by-claim basis.

Sturm responds that the *Quanta* test was formulated to address an exhaustion issue based on the sale of unpatented items and therefore is not applicable here. Sturm argues that use of Keurig's brewers with a non-Keurig cartridge cannot constitute infringement because Keurig's authorized sale of those brewers, which are covered by the asserted patents, exhausted Keurig's rights. We agree with Sturm that Keurig's method claims were exhausted.

Patent exhaustion is an affirmative defense to a claim of patent infringement, *ExcelStor Technology, Inc. v. Papst Licensing GMBH & Co. KG*, 541 F.3d 1373, 1376 (Fed. Cir. 2008), and like other issues in which there are no disputed factual questions, may be properly decided by summary judgment. *See Transcore v. Elec. Transaction Consultants*, 563 F.3d 1271, 1274 (Fed. Cir. 2009). "The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta*, 553 U.S. at 625. The rationale underlying the doctrine rests upon the theory that an unconditional sale of a patented device exhausts the patentee's right to control the purchaser's use of that item thereafter because the patentee has bargained for and received full value for the goods. *See*

*Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (en banc).

The leading cases in which the patent exhaustion doctrine has been applied to method claims are *Quanta* and *United States v. Univis Lens Co.*, 316 U.S. 241 (1942). In *Univis*, the Supreme Court determined that claims to methods for manufacturing eyeglass lenses, and to the finished lenses themselves, were exhausted when the patent holder sold unpatented lens blanks (unpolished blocks of glass) to a manufacturer and distributor that polished and shaped the blanks into finished lenses by practicing the patented methods. *See* 316 U.S. at 250–51. The Court held that the method claims were exhausted because the patent holder sold an unpatented, "uncompleted article" that embodied essential features of the patented method. *Id.*

In *Quanta*, the Court held that method claims for managing and synchronizing data transfers between computer components were exhausted when the patent holder licensed a manufacturer to produce and sell unpatented microprocessors and chipsets that performed the patented methods when incorporated with memory and buses in a computer system. *Quanta*, 553 U.S. at 621. The Court compared the subject items to the lens blanks in *Univis*. *Id.* at 630. As in *Univis*, the Court concluded that exhaustion was triggered by sale of the components because their only reasonable and intended use was to practice the patent and because they embodied essential features of the patented invention. *Id.* at 631.

The Court thus established that method claims are exhausted by an authorized sale of an item that substantially embodies the method if the item (1) has no reasonable noninfringing use and (2) includes all inventive aspects of the claimed method. *Id.* at 638. Both of the *Univis* and *Quanta* opinions emphasized the unpatented nature of the products sold. Thus, the substantial embod-

iment test provided a framework for determining whether the sale of an unpatented component (*e.g.*, lens blanks that are further ground and polished or microprocessors and chipsets that are further attached to memory and buses in a computer system), which by itself does not practice the patented method, is still sufficient for exhaustion. The Court held that it is.

But that is not the case before us, which presents an *a fortiori* fact situation in which the product sold by Keurig was patented. Keurig acknowledges that its brewers are commercial embodiments of the apparatus claims of the '488 and '938 patents. Appellant Br. 27–28. Keurig did not assert its cartridge patent against Sturm and does not dispute that its rights in its brewers were exhausted with respect to the apparatus claims of the asserted patents. *See generally* Reply Br. Instead, Keurig alleges that purchasers of its brewers infringe its brewer patents by using Sturm cartridges to practice the claimed methods and therefore that Sturm is liable for induced infringement. However, as the Supreme Court long ago held, "[W]here a person ha[s] purchased a patented machine of the patentee or his assignee, this purchase carrie[s] with it the right to the use of the machine so long as it [is] capable of use." *Quanta*, 553 U.S. at 625 (quoting *Adams v. Burke*, 84 U.S. 453, 455 (1873)). The Court's decision in *Quanta* did not alter this principle. Keurig sold its patented brewers without conditions and its purchasers therefore obtained the unfettered right to use them in any way they chose, at least as against a challenge from Keurig. We conclude, therefore, that Keurig's rights to assert infringement of the method claims of the '488 and '938 patents were exhausted by its initial authorized sale of Keurig's patented brewers.

To rule otherwise would allow Keurig what the Supreme Court has aptly described as an "end-run around exhaustion" by claiming methods as well as the apparatus that practices them and attempting to shield the patented

apparatus from exhaustion by holding downstream purchasers of its device liable for infringement of its method claims—a tactic that the Supreme Court has explicitly admonished. *Id.* at 630. "Such a result would violate the longstanding principle that, when a patented item is 'once lawfully made and sold, there is no restriction on [its] use to be implied for the benefit of the patentee.'" *Id.* (quoting *Adams*, 84 U.S. at 457). Here, Keurig is attempting to impermissibly restrict purchasers of Keurig brewers from using non-Keurig cartridges by invoking patent law to enforce restrictions on the post-sale use of its patented product. *Id.* at 638.

We agree with the district court that a consumer's potential use of different types of cartridges, *viz.*, cartridges that would not infringe the claimed methods, cannot save Keurig's method claims from exhaustion. Such an outcome would also be counter to the spirit of the doctrine of patent exhaustion because Keurig could control use of the brewers after it sold them. The claims of both the '488 patent and the '938 patent are directed to the brewers and the use of the brewers; therefore, Keurig cannot preclude an individual who purchased one of its brewers from using a non-Keurig cartridge with that brewer.

Moreover, Keurig's argument that patent exhaustion must be adjudicated on a claim-by-claim basis is unavailing. The Court's patent exhaustion jurisprudence has focused on the exhaustion of the patents at issue in their entirety, rather than the exhaustion of the claims at issue on an individual basis. *See id.* at 634–35; *Univis*, 316 U.S. at 249–50. Keurig's decision to have sought protection for both apparatus and method claims thus means that those claims are judged together for purposes of patent exhaustion.

To permit a patentee to reserve specific claims from exhaustion would frustrate the purposes of the doctrine, one of which is to provide an efficient framework for

determining when a patent right has been exhausted. If Keurig were allowed to assert its claims to methods of brewing a beverage using the subject brewers of its apparatus claims of the same patent, the effect would be to vitiate the doctrine of patent exhaustion. The confusion that would be created by Keurig's approach would produce uncertainty regarding the rights of both third parties and end users.

The doctrine of patent exhaustion has the effect of providing an efficient means for ensuring the termination of the patent right. *See Univis*, 316 U.S. at 251 ("[T]he purpose of the patent law is fulfilled . . . when the patentee has received his reward . . . ."); *United States v. Masonite Corp.*, 316 U.S. 265, 278 (1942) ("The test has been whether or not there has been such a disposition of the article that it may fairly be said that the patentee has received his reward for the use of the article."). Permitting Keurig to recover multiple times on its patented brewers by holding Sturm or any other cartridge manufacturer liable for direct, induced, or contributory infringement based on the independent manufacture and sale of cartridges for use in those brewers would be contradictory to these policies and the law.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in holding that Keurig's asserted rights under its '488 and '938 patents were exhausted by the sale of its brewer. The noninfringement judgment of the district court is therefore affirmed.

## **AFFIRMED**

# United States Court of Appeals for the Federal Circuit

_____

**KEURIG, INCORPORATED,**
*Plaintiff-Appellant,*

v.

**STURM FOODS, INC.,**
*Defendant-Appellee.*

_____

2013-1072

_____

Appeal from the United States District Court for the District of Delaware in No. 10-CV-0841, Judge Sue L. Robinson.

_____

O'MALLEY, *Circuit Judge*, concurring in the result.

I concur in the judgment only. I agree with the majority's conclusion that Keurig's asserted patent rights were exhausted by the sale of its patented brewers. Reaching this result requires application of a single principle: "[t]he longstanding [rule] . . . that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008). This would include all rights to claims which recite methods which involve the normal and intended use of the patented item. The conclusion that the rights to the asserted methods were exhausted by the brewer sales in this case does not, however, depend upon whether exhaustion should be assessed on a claim-by-claim or patent-by-patent basis. Keurig's patent rights covering

normal methods of using its brewers to brew coffee would be exhausted by the sale of the Keurig brewers, regardless of which patent or patents contain the relevant apparatus and method claims. Thus, the majority's conclusion that exhaustion should not be assessed on a claim-by-claim basis is dicta. To the extent it could be characterized as anything other than dicta, I must dissent from that conclusion. There could be instances where assessing exhaustion on a claim-by-claim basis—the same way we conduct almost every analysis related to patent law—would be necessary and appropriate. "[E]ach claim must be considered as defining a separate invention." *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984). "Because patent claims are independent of each other, it stands to reason that the legal doctrine of patent exhaustion should apply on a claim-by-claim basis." Amicus Br. of Boston Patent Law Ass'n at 7. Thus, to the extent the majority purports to lay down a blanket rule affecting cases with facts that diverge widely from those we consider today, I must dissent.